IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SONJA SALVINO,

                Plaintiff,

v.                                                   OPINION and ORDER

ANDREW SAUL,                                   19-cv-422-jdp
  Commissioner of the Social Security Administration,

                Defendant.[1]

---

Plaintiff Sonja Salvino seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Salvino not disabled within the meaning of the Social Security Act. Salvino contends that the administrative law judge (ALJ), Diane S. Davis, erred by failing to: (1) consult an expert to evaluate new evidence; (2) adequately consider evidence related to mental limitations; (3) conduct a proper evaluation of subjective complaints; and (4) provide a basis for discounting an opinion of a physician's assistant.

The court is not persuaded that the ALJ erred, so it will affirm the commissioner's decision. The oral argument scheduled for February 7, 2020, is canceled.

---

[1] The court has amended the caption in accordance with Federal Rule of Civil Procedure 25 to reflect the appointment of the new commissioner.

ANALYSIS

Salvino seeks benefits for disability beginning on March 6, 2015, when Salvino was 49 years old. R. 17.[2] In a July 2018 decision, the ALJ found that Salvino suffered from four severe impairments: (1) Huntington's disease; (2) degenerative joint disease, bilateral knees; (3) left shoulder tendinitis; and (4) obesity. *Id.* The ALJ concluded that Salvino's depression was not a severe impairment. R. 18. In light of Salvino's impairments, the ALJ found in her residual functional capacity assessment (RFC) that Salvino can perform sedentary work, with the additional restrictions that she cannot climb ladders, ropes, or scaffolds; she cannot work at unprotected heights; she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and she can frequently reach overhead with both arms. R. 21. Relying on the testimony of a vocational expert, the ALJ found that Salvino could perform her past job as a research assistant, so she was not disabled within the meaning of the Social Security Act. R. 26–27.

The case is now before this court to determine whether the ALJ's decision is supported by "substantial evidence," which means that the court looks to the administrative law record and asks "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency "is not high"; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

---

[2] Record cites are to the administrative transcript, located at Dkt. 7.

**A. Failure to consult an expert to evaluate new evidence**

The state agency consultants submitted their reports in June 2016. R. 115, 131. Salvino contends that the ALJ erred by failing to consult an expert to interpret later evidence related to her Huntington's disease and knee problems.

   **1. Huntington's disease**

The ALJ did not describe Huntington's disease in her decision, and neither side cites descriptions in the record. But Salvino cites the Mayo Clinic's website, which says that it "is an inherited disease that causes the progressive breakdown (degeneration) of nerve cells in the brain. . . . [It] causes movement, cognitive and psychiatric disorders with a wide spectrum of signs and symptoms."[3]

In her decision, the ALJ noted that test results from January 2015 "were consistent with a diagnosis of Huntington's" and that Salvino's treating physician observed in May 2016 that she "was very early in the symptoms of Huntington's disease." R. 22–23. In June 2016, the state agency physician concluded that Salvino could perform light work and had no mental limitations. R. 114–15.

Salvino doesn't contend in her opening brief that her Huntington's disease was disabling before June 2016, but she points to new records that the state agency physician didn't consider. First, she says that, in June 2016, "an MRI confirmed the disease." Dkt. 10, at 15 (citing R. 445). Second, she cites notes from the Mayo Clinic after a neurobehavioral exam in August 2016. R. 449. She says that only an expert could determine the significance of these

---

[3] Mayo Clinic, "Hungtington's diease," https://www.mayoclinic.org/diseases-conditions/huntingtons-disease/symptoms-causes/syc-20356117.

records and that the ALJ "played doctor" by deciding on her own that they didn't show disability.

The commissioner defends the decision not to consult another expert on two grounds. First, he says that Salvino had counsel during the administrative proceedings, so she forfeited this issue by failing to either obtain her own supplemental expert opinion or ask the ALJ to do so. The commissioner cites *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010), in which the court held that the ALJ didn't err by declining to obtain additional expert evidence when the plaintiff "never presented an opinion . . . from those who treated [her], nor did she ask the ALJ to recontact the state-agency consultants." Second, the commissioner says that the new evidence Salvino cites isn't the type of evidence that would require a new expert opinion.

Salvino doesn't respond to the commissioner's first argument in her reply brief, which is reason enough to deny relief on this issue. But even if Salvino didn't forfeit this issue, the court agrees with the commissioner that a new expert opinion wasn't required.

Salvino's argument rests on the assumption that the ALJ must obtain a new expert opinion every time there is new evidence, but the rule is more nuanced than that. The decision she cites states that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). So a claimant must first show that the new evidence is significant enough to require a new opinion. And Salvino cites no authority for the view that the ALJ is always prohibited from reading a medical record without expert assistance. Rather, "*Moreno* supports the conclusion that ALJs are not forbidden in all circumstances from independently evaluating medical records. . . . [I]t makes

4

sense that ALJs would be permitted to consider medical records without the assistance of an expert when the records do not require medical expertise to interpret." *Ross v. Berryhill*, No. 18-cv-215-jdp, slip op. at 4 (W.D. Wis. Dec. 14, 2018). In the cases Salvino cites, it was clear that the ALJ discounted significant new evidence that could have changed the outcome of the decision. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (a physician's evaluation discussing "the need for a hip replacement and evidence of further spinal degeneration" contained "significant, new, and potentially decisive findings" that ALJ wasn't qualified to interpret); *Goins v. Colvin,* 764 F.3d 677, 680 (7th Cir. 2014) ("The administrative law judge failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence.").

In this case, the court isn't persuaded that the new evidence Salvino cites was either significant or too technical for the ALJ to consider. The first piece of evidence is not, as Salvino suggests in her brief, an MRI "confirm[ing]" a diagnosis of Huntington's. *See* Dkt. 10, at 15. Rather, it is a June 2016 note from the Mayo Clinic repeating Salvino's allegation that "[t]esting confirmed Huntington's disease." R. 444. But the note clarifies that "[s]he does not have the report of the test." *Id.* And even if Salvino had received a definitive diagnosis of Huntington's disease, it is not clear what that would have changed. The ALJ accepted that Salvino suffered from Huntington's disease: she found that it was a severe impairment. The question is not whether Salvino has a particular diagnosis; the question is whether Salvino has limitations that prevent her from working full time. *See Carradine v. Barnhart,* 360 F.3d 751, 754 (7th Cir. 2004) ("The issue in the case is not the existence of these various conditions of hers but their severity."). Salvino points to nothing in the June 2016 note that suggested that her symptoms had worsened.

5

The second piece of evidence was an August 2016 note from the Mayo Clinic regarding a neurobehavioral exam. R. 448–49. Although she quotes various passages from this note, she doesn't explain the significance of these passages. The overall conclusion of the psychiatrist, Adam Minniear, was that Salvino had "a normal cognitive profile." R. 449. He noted that she "demonstrated strong learning and memory abilities, contrary to her primary complaint" and that "[e]xecutive functioning and information processing speed, which typically decline early in the course of Huntington's disease, were also intact on testing." *Id.* Salvino also quotes passages that describe her subjective complaints. But the ALJ did not need an expert to evaluate those or to determine that the test didn't show significant progression of her symptoms.

The August 2016 note did state that Salvino "endorsed severe depression" on a "standardized mood questionnaire." *Id.* But again, a test result that Salvino was depressed isn't probative without additional evidence about how depression limited her abilities. The ALJ observed that Salvino reported "longstanding depression," and the ALJ—relying in part on expert opinions—explained in detail why she believed that Salvino's depression wasn't a severe impairment. R. 18–19. Salvino doesn't cite evidence or even allege that her depression became more severe after June 2016. In fact, when the ALJ asked Salvino during the administrative hearing about the conditions that prevented her from working, Salvino didn't mention depression. R. 47–49. *See also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("The burden was on [the claimant] to explain why she was disabled as a result of her depression.").

In her reply brief, Salvino broadens her argument, more generally challenging the ALJ's reasoning for finding that her Huntington's disease wasn't disabling. Specifically, she says that that the ALJ shouldn't have relied on her failure to seek treatment for Huntington's after 2016. Salvino cites the principle that an ALJ may not consider lack of treatment as evidence

6

undermining a disability claim unless the ALJ explores the reasons for the lack of treatment at the administrative hearing. *See Beardsley v. Colvin,* 758 F.3d 834, 840 (7th Cir. 2014) ("[T]he ALJ may not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.").

Salvino didn't include this argument in her opening brief, so it is forfeited. *See Brown v. Colvin,* 661 F. App'x 894, 895 (7th Cir. 2016) ("[The plaintiff] waived those arguments by not developing them and by raising them for the first time only in his reply brief."). Regardless, the argument fails because the ALJ *did* ask Salvino—multiple times—about why she didn't seek treatment. When the ALJ first asked Salvino about treatment for Huntington's, Salvino simply ignored the question and addressed a different issue. R. 49. When the ALJ pressed her, Salvino admitted that "it is time . . . to go back in for another follow up." R. 50. And then Salvino gave the ALJ multiple, contradictory explanations for why she hadn't sought treatment in the interim. She initially said that "[i]t's early enough in [her] Huntington's that [she doesn't] have to go that often" to see her specialist, which suggests that her Huntington's is not yet significantly limiting. *Id.* Then she said that "there's no way to help this" and that she believed that doctors just wanted to use her as a "guinea pig." R. 51–52. When the ALJ asked Salvino specifically why she declined her specialist's recommendation to do physical therapy for balance issues related to Huntington's, Salvino first said that she "did physical therapy at home" but later said, "[t]here is no physical therapy for Huntington's." R. 52.

Salvino doesn't contend in her briefs that treatment for Huntington's is a useless exercise. The website she cites states: "No treatments can alter the course of Huntington's disease. But medications can lessen some symptoms of movement and psychiatric disorders. And multiple interventions can help a person adapt to changes in his or her abilities for a

7

certain amount of time."[4] The ALJ also cited statements from Salvino's treating physician that Huntington's can be stabilized with medication. R. 25. So the ALJ did not err in relying on Salvino's failure to seek treatment as evidence that her symptoms aren't as bad as she says they are. *See Mitze v. Colvin*, 782 F.3d 879, 881–82 (7th Cir. 2015) (claimant's decision to "turn[] down other treatment options [is] another reason to think she may have been exaggerating her symptoms").

### 2. Knee problems

Before June 2016, x-rays showed that Salvino suffered from "mild to moderate osteoarthritis" in her knees. R. 22. The ALJ accommodated this impairment by limiting Salvino to sedentary work. R. 24. But Salvino says that an expert was needed to interpret x-rays from June 2016 and October 2017 that showed "mild medial compartment narrowing" in her knees. Dkt. 10, at 16. As evidence that her condition was worsening, Salvino cites injections that she received for knee pain in 2016, 2017, and 2018. *Id.*

Salvino says nothing about her knees in her reply brief, which suggests that she has abandoned this issue. Regardless, the injections aren't probative because Salvino was receiving those before June 2016. She doesn't challenge the ALJ's conclusions that "she has been treated with periodic injections with good results." R. 24.

As for the x-rays, the fact that they showed "mild" changes undermines any contention that they demonstrated a significant change. *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (ALJ did not err in failing to consult an expert regarding MRI that showed "mild" abnormalities). And the ALJ was entitled to rely on Salvino's failure to do physical therapy for

---

[4] Mayo Clinic, "Hungtington's diease," https://www.mayoclinic.org/diseases-conditions/huntingtons-disease/diagnosis-treatment/drc-20356122.

8

her knees after June 2016 as evidence that her knee condition wasn't getting worse. R. 25. In any event, Salvino doesn't cite any evidence demonstrating the significance of the x-ray and she doesn't identify any additional restrictions that the ALJ should have incorporated into her RFC to account for any worsening in the knee condition, so Salvino has failed to show that the ALJ erred by failing to consult a new expert. *Olsen*, 551 F. App'x at 875 ("Olsen does not point to any medical source showing that the ALJ misconstrued the MRIs. And simply quoting a portion of an almost indecipherable MRI report cannot satisfy Olsen's burden to show that the ALJ's decision is not supported by substantial evidence.").

**B. Mental limitations**

**1. Opinion of examining psychologist Kurt Weber**

Kurt Weber conducted a mental status evaluation of Salvino in November 2015, focusing on "depression and memory concerns." R. 379. Based on that evaluation, Weber stated that Salvino "should experience" mild to moderate limitations in the ability to understand, remember, and carry out simple instructions; to respond appropriately to supervisors and co-workers; and to maintain concentration, attention, and work pace. R. 384. The ALJ gave "little weight" to Weber's opinion for multiple reasons: the opinion was based on one-exam; it rested "heavily" on Salvino's subjective reports; Salvino had not sought psychiatric treatment; and neuropsychological testing conducted after the exam was normal. R. 26.

Salvino doesn't challenge the ALJ's conclusion that Weber's opinion was inconsistent with later test results, and she doesn't challenge that inconsistency as an inadequate basis for discounting Weber's opinion. Again, that is reason enough to reject this argument. In any event, her challenges to the ALJ's other reasons aren't persuasive.

9

First, it is well established that the ALJ may discount a medical opinion if it is based on the claimant's subjective complaints. *See Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013). Salvino says that the exam itself was objective evidence, but that is only partially correct. Weber's report shows that he relied on a mix of objective tests and Salvino's subjective reports. R. 380–83. And Salvino doesn't point to any objective portion of the exam that supports Weber's findings about her mental limitations. Rather, as the commissioner points out, the objective tests appear to contradict those findings.

For example, Weber observed that: Salvino "seemed to have an adequate ability to recall events that occurred in the past"; she was able "to listen to a series of five words, and repeat them back" twice; she was "able to recall a series of five digits forward and series of three digits in reverse"; she was "able to recall each of the five words presented to her after a period of several minutes"; she was able to count back from 30 to zero in three-digit increments in "an appropriate amount of time"; she was "able to spell the word WORLD both forward and in reverse order"; and she "had no problem in following the conversation at any point during the assessment." R. 381–82. The only discussion of memory impairment and depression was related to Salvino's own statements. R. 381 ("The claimant indicated that over the past several months, she has been bothered by a sense of feeling down, depressed, or hopeless on nearly every day."); R. 379 ("She reports that her 'brain is dying.'"). So it was reasonable for the ALJ to conclude that Weber's findings about Salvino's mental limitations were based on Salvino's subjective reports.

Second, Salvino says that the ALJ wasn't entitled to consider Salvino's failure to seek mental health treatment without asking her the reasons for that failure during the administrative hearing. But, as the court already discussed, the ALJ repeatedly asked Salvino

10

about treatment for Huntington's disease, which she says is the cause of her memory problems. And the ALJ had a good reason for not asking Salvino about treatment for depression, which is that Salvino didn't identify depression as a reason she was unable to work. In any event, because the ALJ had other valid grounds for rejecting Weber's opinion, the court need not decide whether this reason, standing on its own, would be sufficient to justify the ALJ's decision.

Third, Salvino says that the ALJ erred by failing to give any specific weight to the fact that Weber was an examining consultant. But the case Salvino cites for this proposition says that the ALJ must provide "a good explanation" when she discounts an opinion of an examining consultant. *Beardsley*, 758 F.3d at 839. For the reasons discussed above, the ALJ did that in this case.

### 2. Consideration of nonsevere mental impairments

Salvino contends that the ALJ erred by failing to include restrictions for mental impairments that she found to be nonsevere. Salvino is correct that an ALJ must consider the effects of nonsevere impairments, *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014), but there is no rule that an ALJ must include restrictions for nonsevere impairments that do not actually limit the claimant's ability to work. Salvino fails to identify any restrictions that the ALJ should have included, and she doesn't cite any evidence that would support additional restrictions, so this argument fails. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (claimant is not entitled to relief on appeal if she "does not identify medical evidence that would justify further restrictions"); *Hoy v. Astrue*, 390 F. App'x 587, 592 (7th Cir. 2010) (rejecting argument that the ALJ failed to consider effect of impairments in combination when the plaintiff "only speculate[d] about the effect of these conditions on him").

## C. Subjective complaints

Salvino contends generally that the ALJ failed to adequately consider her subjective complaints:

> In this case, the ALJ's assessment of evidence, her reported symptoms, and the intensity of her symptoms were not properly considered. When the ALJ either ignores or minimizes a large portion of the record, the ALJ's assessment for consistency cannot be supported by substantial evidence. In this case, the ALJ['s] failure to adequately assess her subjective complaints in light of her Huntington's Disease or to access her arthritic knees without a medical expert renders her credibility findings flawed.

Dkt. 10, at 26. This argument fails because Salvino doesn't raise any specific objections to the ALJ's evaluation of her subjective complaints. The ALJ gave multiple reasons for questioning Salvino's testimony, including that it was contradicted by other evidence. For example, she reported that she needs to use a walker, but examinations showed that she was able to walk without assistance. R. 24. And she testified that she is "unable to remember anything," but cognitive testing showed normal results. R. 25. Because Salvino doesn't challenge any of the ALJ's reasons for declining to credit her subjective complaints, she hasn't shown that the ALJ's credibility analysis was "patently wrong," which is what she is required to show. *Pepper*, 712 F.3d at 367.

## D. Opinion of physician's assistant Katherine Hansen

Physician's assistant Katherine Hansen opined that Salvino could not lift more than 20 pounds, walk more than 10 to 20 minutes, stand more than 15 to 20 minutes, or walk more than two or three stairs. Hansen also said that she could not squat, stoop, or lunge and that she should rest every 20 to 25 minutes. R. 459.

The ALJ gave "some limited weight" to this opinion. She observed that the standing and walking restrictions were consistent with the RFC. But she rejected the opinions about

12

being unable to squat, stoop, or lunge, and needing to rest every 20 to 25 minutes. She cited multiple reasons, including that Hansen didn't explain the basis for her opinion and that the opinion was inconsistent with the decision to treat Salvino's knee problems conservatively.

Salvino contends that the ALJ erred by failing to consider Salvino's history of steroid injections, which Hansen was involved in providing. But the ALJ explained elsewhere in her decision that the injections didn't support a finding of disability because Salvino didn't need them frequently and she had good results when she received them. R. 24–25. Salvino doesn't challenge that reasoning.

In her reply brief, Salvino contends that the commissioner "conceded" this issue by failing to respond to it in his opposition brief. But that is incorrect. The commissioner devoted three pages to this issue, pointing to several reasons why the ALJ found that Salvino's knee condition was relatively mild. Dkt. 12, at 12–15. Salvino doesn't address any of the reasons cited by the commissioner or the ALJ, so she isn't entitled to relief on this issue.

E.  Conclusion

The court concludes that the ALJ's decision is supported by substantial evidence, which is all that is required. The court will affirm the ALJ's decision.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED and the February 7, 2020 oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered January 28, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge